## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRADY COHEN, individually and on behalf of all others similarly situated,<br><br>                             Plaintiff,<br><br>      v.<br><br>CASPER SLEEP INC. and NAVISTONE, INC.,<br><br>                        Defendants. | Civil Action No.: 1:17-cv-09325-WHP<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Brady Cohen ("Plaintiff"), individually and on behalf of himself and all others similarly situated, by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

### NATURE OF THE CASE

1.      This is a class action suit brought against Defendants Casper Sleep Inc. ("Casper") and NaviStone, Inc. ("NaviStone") (collectively, "Defendants") for wiretapping visitors to Casper's website, casper.com. The wiretaps, which are secretly embedded in the computer code on casper.com, are used by Defendants to scan the user's computer in search of files that can be used to de-anonymize and identify the user, and also to observe visitors' keystrokes, mouse clicks and other electronic communications in real time for the purpose of gathering Personally Identifiable Information ("PII") to de-anonymize those visitors – that is, to match previously unidentifiable website visitors to obtain their names and home addresses, along with detailed data concerning their browsing habits. These wiretaps enable Defendants to

immediately, automatically, and secretly observe the keystrokes, mouse clicks and other electronic communications of visitors regardless of whether the visitor ultimately makes a purchase from Casper.  By doing so, Defendants have breached Casper's privacy policy, have violated Title I of the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510-22, also known as the "Wiretap Act," which prohibits the intentional interception of wire, oral, and electronic communications unless specifically authorized by a court order, have violated the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, *et seq.*, which prohibits unauthorized access to wire or electronic communications while it is in electronic storage, have violated New York's General Business Law §§ 349 and 350, and have committed other tortious acts as described herein.

2.     On several occasions within 6 months prior to the filing of this lawsuit, Plaintiff Brady Cohen visited casper.com using an Android device, but has never made any purchase from Casper.  During each of Plaintiff's visits Defendants scanned his device for files that could be used to de-anonymize and identify him, and captured his electronic communications and redirected them to NaviStone in real time, and used the intercepted data to attempt to learn his identity, postal address, and other PII.

3.     Plaintiff brings this action on behalf of himself and a class all persons whose electronic communications were intercepted through the use of NaviStone's wiretaps on casper.com.

## PARTIES

4.     Plaintiff Brady Cohen is a natural person and citizen of the State of New York who resides in New York, New York.  Several times over the last six months, Mr. Cohen browsed Defendant Casper's website at casper.com while shopping for a new mattress.  Although Mr. Cohen never purchased anything from Defendants and never consented to any

interception, disclosure or use of his electronic communications, Mr. Cohen's keystrokes, mouse clicks[1] and other electronic communications were intercepted in real time and were disclosed to NaviStone through Casper's use of NaviStone's wiretaps. Mr. Cohen was unaware at the time that his keystrokes, mouse clicks and other electronic communications were being intercepted and disclosed to a third party.

5.      Defendant Casper Sleep Inc. is a Delaware corporation with its principal place of business at 230 Park Avenue South, New York, New York 10003. Casper does business throughout New York and the entire United States. Despite having begun its operations as recently as 2014, Casper is now a leading manufacturer and retailer of mattresses in the U.S. On June 18, 2017, the *New York Times* reported that Casper was valued at $750 million in its latest round of financing.[2] On August 23, 2017, *Fortune* reported that Casper sold $200 million of mattresses last year and recently rejected a $1 billion buyout offer from Target.[3]

6.      Defendant NaviStone, Inc. is a Delaware corporation with its principal place of business at 1308 Race Street, Cincinnati, Ohio 45202. NaviStone does business throughout New York and the entire United States. NaviStone is an online marketing company and data broker that deals in U.S. consumer data.

**JURISDICTION AND VENUE**

7.      This action is brought pursuant to the federal Wiretap Act, 18 U.S.C. §§ 2510, *et*

---

[1] As used herein, the term "mouse clicks" also refers to "touch gestures" such as the "tap," "swipe," and similar gestures used on touchscreen devices.

[2] Michael J. de la Merced, *Casper, Mattress Maker, Raises $170 Million and Plans I.P.O.*, NY TIMES, June 18, 2017, https://www.nytimes.com/2017/06/18/business/dealbook/casper-mattress-target-investment-initial-public-offering.html

[3] Erin Griffith, *How Casper Flipped the Mattress Industry*, FORTUNE, August 23, 2017, http://fortune.com/2017/08/23/casper-mattress-philip-krim/

3

*seq.* and the Stored Communications Act, 18 U.S.C. §§ 2701, *et seq.*

8.    The jurisdiction of this Court is predicated on 28 U.S.C. § 1331.

9.    Both Defendants transact business in this District.  Venue is proper in this District under 28 U.S.C. § 1391 because Defendants do substantial business in this District, a substantial part of the events giving rise to Plaintiff's claims took place within this District, and Casper's principal place of business is in this District.

10.    This Court has personal jurisdiction over Defendants because Defendants conduct substantial business within New York, such that Defendants have significant, continuous, and pervasive contacts with the State of New York.  Additionally, Casper's principal place of business is in New York, New York.  Furthermore, a substantial part of the events giving rise to Plaintiff's claims took place within New York.

### **FACTS COMMON TO ALL CLAIMS**

**Overview Of NaviStone's Wiretaps**

11.    Defendant NaviStone is a marketing company and data broker that deals in U.S. consumer data.  NaviStone's business model involves entering into voluntary partnerships with various e-commerce websites.  Upon partnering with NaviStone, these e-commerce websites will agree to insert a small parcel of computer code into their websites, which is provided by NaviStone (and is written by NaviStone).  This small parcel of computer code serves as a so-called "back door" in computer terminology – its function is to retrieve and execute a much larger portion of JavaScript code that is remotely hosted on NaviStone's servers.  As NaviStone explains on navistone.com, "[a]dding a simple line of code to each page of your website enables a wealth of new marketing data."

12.    This "back door" code permits NaviStone to execute its own computer code on

the websites of its e-commerce partners. Stated otherwise, the "simple line of code" that NaviStone requests its partners add "to each page of [their] website[s]" serves to call and execute remote computer code that is: (i) provided by NaviStone, (ii) written by NaviStone, and (iii) hosted on a remote server by NaviStone.

13.     As currently deployed, NaviStone's remote code functions as a wiretap. That is, when connecting to a website that runs this remote code from NaviStone, a visitor's IP address and other PII is sent to NaviStone in real-time. NaviStone's code also scans the visitor's computer for data files that could reveal the visitor's identity. NaviStone's code will also spy on the visitor as he or she browses the website, capturing and redirecting the visitor's keystrokes, mouse clicks and other electronic communications to NaviStone. This real-time interception and transmission of visitors' electronic communications begins as soon as the visitor loads casper.com into their web browser. The intercepted communications include, among other things, information typed on forms located on casper.com, regardless of whether the user completes the form or clicks "Submit." NaviStone then uses this information to attempt to de-anonymize website visitors.

14.     NaviStone maintains a back-end database containing data and profiles on consumers across the U.S., which includes consumers' names and mailing addresses. As users browse the various e-commerce websites that deploy NaviStone code, NaviStone attempts to "match" elements of the intercepted data with records of real-life people maintained in its back-end database. Once a match is found, NaviStone de-anonymizes the user and updates its back-end database with the user's current browsing activities and PII.

15.     NaviStone has partnered with hundreds e-commerce websites since beginning its operations. By combining and correlating its data, NaviStone can watch consumers as they

5

browse hundreds of participating e-commerce sites, in real-time.

16.     Pursuant to an agreement with NaviStone, Casper intentionally embedded NaviStone's software coded wiretaps on casper.com in order to scan visitors' computers for files that could be used to identify them, and also to intercept visitors' communications to obtain de-anonymized PII of visitors to Casper's website.

17.     NaviStone obfuscates the wiretap codes through dummy domains to attempt to conceal is activities.  For example, part of NaviStone's remote code running on the Casper is located at http://code.murdoog.com/onetag/C14A6D02CAA717.js (as of the writing of this Complaint).

18.     On June 20, 2017, a leading tech news website, gizmodo.com, published an exposé on NaviStone's wiretaps entitled "Before You Hit 'Submit,' This Company Has Already Logged Your Personal Data."[4]  The Gizmodo article describes NaviStone as "a company that advertises its ability to unmask anonymous website visitors and figure out their home addresses."[5]  The article revealed that NaviStone is "in the business of identifying 'ready to engage' customers and matching 'previously anonymous website visitors to postal names and addresses.'  [NaviStone] says it can send postcards to the homes of anonymous website shoppers within a day or two of their visit, and that it's capable of matching '60-70% of your anonymous site traffic to Postal names and addresses.'"[6]

19.      Indeed, on its own website, NaviStone boasts that it "invented progressive website visitor tracking technology," which allows it to "reach [] previously unidentifiable

---

[4] https://gizmodo.com/before-you-hit-submit-this-company-has-already-logge-1795906081

[5] *Id.*

[6] *Id.*

website visitors."[7]  According to NaviStone, "[b]y simply adding one line of code to each website page, you can unlock a new universe of 'ready to engage' customers."[8]

20.      NaviStone also explains how to implement this software wiretaps on its clients' webpages:

> 1:      Insert One Line Of Code On Each Webpage.
> We'll provide you and your IT team with a short tracking code (and instructions) to insert on *each page* of your website.  Data collection begins immediately and is reviewed for quality by our staff.
>
> 2:      Identify Engaged Website Visitors.
> Data is stored in a secure environment specifically dedicated to your company's information.  Website visitors are identified as direct marketing prospects or reactivation targets based on their level of engagement on your site, as identified by unique algorithms developed by our data scientists.
>
> 3:      Identify Verified Names and Addresses.
> When unidentified website visitors show an intent to purchase based on the modeling process described above, NaviStone® will secure postal names and addresses to include in your direct marketing prospecting and reactivation programs.  …
>
> 4:      Use, Expand, Repeat.
> NaviStone® will continue to track website behavior to identify new, unique prospects and reactivation targets so you can expand and optimize this unique process for success time and time again.[9]

21.      NaviStone's wiretaps intercept communications in real time.  As *Gizmodo* put it,

---

[7] https://www.navistone.com/

[8] *Id.*

[9] https://www.navistone.com/how-it-works (last visited Nov. 3, 2017).

"before you hit 'submit,' this company has already logged your personal data."[10] *Consumerist* also shared the same concern: "these forms collect your data even if you don't hit 'submit.'"[11]

22.    NaviStone's wiretaps are engaged as soon as the visitor arrives at casper.com. By merely loading the main page on casper.com, with no other action, the visitor is connected to NaviStone's wiretaps, which scan visitors' computers for identifying information, and also intercept and monitor their communications.

23.    As the visitor interacts with casper.com, for example, by adding an item to a shopping cart, typing information onto a form, viewing an item, etc., all of these communications are captured and redirected to NaviStone in real time, through the wiretaps. Indeed, as will be demonstrated below, when NaviStone's code is deployed on a webpage that contains an online form – such as a "sign up" page or an "account registration" page – the data is captured and redirected to NaviStone as it is typed. Visitors do not need click "Submit" on the form, or take any other action, for their communications to be intercepted and disclosed to NaviStone.

24.    NaviStone's wiretaps are deployed on hundreds of e-commerce websites. Upon information and belief, NaviStone maintains and correlates its back-end database of User Data and PII across these hundreds of websites. For example, assume that Site X and Site Y are both running NaviStone's wiretaps. Now, assume that a user provides her name and phone number to Site X, but _not_ to Site Y. Through the use of NaviStone's wiretaps and back-end database, NaviStone can de-anonymize the user on Site Y and know her name and phone number, even

[10] https://gizmodo.com/before-you-hit-submit-this-company-has-already-logge-1795906081 (last visited Nov. 3, 2017).

[11] https://consumerist.com/2017/06/29/these-forms-collect-your-data-even-if-you-dont-hit-submit/

8

though she never provided that information to Site Y.

**NaviStone's Wiretaps In Action On Casper.com**

25.     Some aspects of the operation of NaviStone's wiretaps on the casper.com website can be observed using the Developer Tools Window in the Google Chrome browser.  In the images below, the casper.com website, as it appears normally through the browser is shown in the left-hand side of the window, while the Developer Tools Network View, showing incoming and outgoing transmissions, is shown in the right-hand window.

26.     When casper.com is loaded into a browser, the website automatically retrieves a computer file located on a remote server.  At the time this Complaint was written, the computer file was named "C14A6D02CAA717.js," and it was hosted at http://code.murdoog.com/onetag/



27.     The file "C14A6D02CAA717.js" is 25 KB in size and contains computer code

written in a language called JavaScript.  It appears as such:

```
/*! MGX v2 |(c) 2015 Melasa Group, llc. | melasagroup.com | casper.com | origin onetag 10/19/2017 1:40:10 AM */
/*! 1.05 */
(function(n,t,i){n._MGX_LU=function(n){this.url=n;this.addParam=function(n,t){return typeof
t=="undefined"||t===null||t===""?this:(this.url+=this.url.indexOf("?")
<0?"?":"&",this.url+=n+"="+encodeURIComponent(t),this)}};n._MGX_LG=function(n,i,r,u,f,e){try{var
o=t.createElement("img"),s=t.getElementsByTagName("body")[0],h=new
_MGX_LU("https://apis.murdoog.com/mgx_2/visitaction/pxLogMessage");h.addParam("k",n).addParam("v",i).addParam("p",r).
addParam("rr",u).addParam("ms",f.replace(/(\r\n|\n|\r|&[a-z]+;)/g," ").replace(/[\s\uFEFF\xA0]+/g,"
")).addParam("st",e.replace(/(\r\n|\n|\r|&[a-z]+;)/g," ").replace(/[\s\uFEFF\xA0]+/g,"
"));o.style="display:none";o.src=h.url;s&&s.appendChild(o)}catch(c)
{}};try{if(/(googlebot|bingbot)/i.test(n.navigator.userAgent))return;i(n,t)}catch(r)
{_MGX_LG("4A6D02CAA717",null,null,"100",r.message,r.stack)}})(window,document,function(n,t)
{if(t.cookie.indexOf("MGX_Dev")>-1&&typeof n._MGX_Dev=="undefined"){n._MGX_Dev=unescape(t.cookie.split("MGX_Dev=")
[1].split(";")[0])}var i=_MGX_Dev.split("|"),u=new
n._MGX_LU("//api2.murdoog.com/dev/C14A6D02CAA717.js").addParam("seq",typeof i[0]!="undefined"?
i[0]:"").addParam("ver",typeof i[1]!="undefined"?i[1]:"").addParam("wrp",typeof i[2]!="undefined"?
i[2]:""),r=t.createElement("script");r.type="text/javascript";r.src=u.url;t.body.appendChild(r);console.log("Loading
MGX Dev Library "+_MGX_Dev)}else(function(n,t,i){typeof t[n]=="undefined"&&(t[n]=new i(n,t,t.document))})((typeof
MGXnamespace=="undefined"?"MGX":MGXnamespace,n,function(n,t,i,r){var u;return{Info:"MGX Version 2.04.xxx(see
MGX.Version for
subversion)",TimeOut:1e4,Delay:1e3,ProspectingInterval:3e3,LoopInterval:1e3,CommitType:"jsonp",BaseApi:"https://apis.
murdoog.com/mgx_2/C/RawData/",PixelApi:"https://apis.murdoog.com/mgx_2/C/Pixel/",ProspectingString:"",Debug:!1,FrameR
ef:!1,OverrideHost:!1,SyncVisitor:!1,SyncUrl:!1,Def:{pageload:{Label:"PageLoad"}},EmailParams:
{RestrictedFields:"",RestrictedValues:""},Version:"2.04.023",AccessKey:"4A6D02CAA717",Prospecting:"1DD819",BulkParam:
"cohcid",BaseUrl:["casper.com"],SuppressUrl:
[],PageLoadId:"",VisitorId:"",MgxVisitorId:"",SessionId:"",NewSession:"",Sequence:1,VisitSequence:1,RunOnce:0,Keycode
:"",Cid:"",Uid:"",Eid:"",Xid:"",Csi:"",JSON:t.JSON,Title:i.title,Domain:t.location.hostname.split(".").length-
==2?".."+t.location.hostname:t.location.hostname.slice(t.location.hostname.indexOf(".")),Url:t.location.href,Protocol:
t.location.protocol,Host:t.location.hostname,Path:t.location.pathname,Search:t.location.search,Hash:t.location.hash,R
eferrer:i.referrer,EmSent:[],Em:"",UtmSource:"",UtmMedium:"",UtmCampaign:"",regex:{Guid:/^[0-9a-f]{8}-[0-9a-f]{4}-[1-
5][0-9a-f]{3}-[89ab][0-9a-f]{3}-[0-9a-f]{12}$/i,Email:/([\w-\.]+@[\w-\.]+\.[a-z]{1,3})/i,Money:/\$?(\d{1,3}\,?)*\.?
\d{2}?/i},ev:{c1:0,ch:0,su:0,sc:0},pg:"pageload",restrict:
["identifier","priority","altFunction","preProcess","postProcess","waitFor"],procs:
["setPageType","setUid","setEid","setCsi","handleEm","handlePageLoad","handleProspecting","handleEvents","handleLoops
"],cd:[],rs:[],main:function(n){var t=this;t.RunOnce||(t.RunOnce&&t.setFrame(),t.pg="pageload",
```

The top line of the code contains a comment indicating that it is to be used on "casper.com."
However, the remainder of the code lacks comments, explanations, proper indenting, or
intelligible names for variables.  Essentially, this code is obfuscated.

28.      The domain "code.murdoog.com," which deploys this code, is owned and
operated by NaviStone.

29.      Next, the code in C14A6D02CAA717.js is executed, with no further actions by
the user, or prompting by Casper or NaviStone.  This immediately begins capturing the visitors'
electronic communications with casper.com and redirecting them to apis.murdoog.com



30.   The domain "apis.murdoog.com" is also owned and operated by NaviStone.

31.    The intercepted communications are encoded in a format called Base64.  When decoded, they appear as such:

{"v":"86101707-43b3-4dda-aabf-184918330cc8","m":"558dd293-e3fa-492d-a640-9596ee5b8d07","csi":307645136,"se":"d8c99a69-083f-45ad-bc44-830e0b35afd4","n":1,"p":"d178927f-41e2-467a-80aa-06718f1066f4","u":"https://casper.com/","pn":"/","t":"The Best Bed for Better Sleep | Casper®","c":"https://casper.com/","pr":"1DD819","s":1,"vs":1,"l":"Category","v19":"No Description|No Keywords","v01":"0","v02":"Homepage"}

The human-readable portions of these intercepted data confirm that the visitor has reached the "Homepage" on "https://casper.com/".  Based on information and belief, other portions of these intercepted data (which are obfuscated such that they are machine-readable but are not readable

11

by humans) include a timestamp, an ID number, the user's IP address, and other PII.

32.     NaviStone's wiretaps scan the visitor's computer for files that can be used to de-anonymize and identify the user.  On information and belief, the wiretap searches for tracking files employed by other websites or online data brokers to de-anonymize and identify the user.

33.     NaviStone's wiretaps also monitor the user as he or she browses casper.com.  The wiretaps will report every page visited by the user and any items the user added to his or her online shopping cart.  In the illustration below, on the left-hand side the website, as ordinarily viewed by a visitor, shows that the visitor has added a "Casper Wave" mattress to his or her shopping cart.  At the right-hand side of this illustration, the Developer Tools Network View shows that this information is immediately captured and redirected to NaviStone through apis.murdoog.com:



This activity is immediately communicated to NaviStone as such:

{"v":"86101707-43b3-4dda-aabf-184918330cc8","m":"558dd293-e3fa-492d-a640-9596ee5b8d07","csi":1666901669,"se":"d8c99a69-083f-45ad-bc44-830e0b35afd4","p":"85c670cb-557e-40ff-a502-4cb51905c14c","u":"https://casper.com/mattresses/casper-wave/","pn":"/mattresses/casper-wave/","r":"https://casper.com/mattresses/","t":"Shop the Casper Wave: Fine-tuned & Obsessively Designed | Casper®","c":"https://casper.com/mattresses/casper-wave/","pr":"1DD819","eid":"ns_seg_100","s":3,"vs":3,"l":"Action","v01":"AddToCart","v03":"CartClick","v04":"/mattresses/casper-wave/"}

34.    When filling out forms, any PII the user provides is immediately, automatically, and secretly transmitted to NaviStone in real-time.  In the illustration below, on the left-hand side the website, as it is ordinarily displayed to a visitor, shows that the visitor has just arrived on the "Checkout" page, and has not entered any information yet:



35.     Now, in the illustration below, the user has entered his name "John" on the shipping address form.  At the right-hand side of this illustration, the Developer Tools Network View shows this information is instantly captured and redirected to NaviStone through apis.murdoog.com.



36.     Now, in the illustration below, the user has entered his address at "123 State Street" on the shipping address form.  At the right-hand side of this illustration, the Developer Tools Network View shows this information is instantly captured and redirected to NaviStone's through apis.murdoog.com.



37.     By intercepting these communications, NaviStone is able to learn the identity of the visitor.  As NaviStone boasts, it is capable of matching "60-70% of your anonymous site traffic to Postal names and addresses."[12]

**Defendants Violated Casper's Privacy Policy**

38.     Casper's website maintains a Privacy Policy (hereafter, the "Privacy Policy"), which "applies to https://casper.com/ (the 'Site') and all other websites owned and operated by Casper Sleep Inc."  The Privacy Policy states that "[t]he term[s] 'Casper,' 'we' and 'us' includes Casper Sleep Inc. and our affiliates and subsidiaries."

39.     During all relevant time periods, Casper's Privacy Policy "explains how Casper

---

[12] *Id.*

may: collect, use, and disclose Personal Information (defined below) we obtain through the Site, your communications with us, or from third parties. It also describes the choices available to you regarding the use of, your access to, and how to update and correct your personal information."

40.     In turn, the term "Personal Information" is defined in Casper's Privacy Policy to mean:

> [I]nformation that alone or when in combination with other information may be used to readily identify, contact, or locate you, such as: name, address, email address, or phone number. We do not consider Personal Information to include information that has been anonymized such that it does not allow a third party to easily identify a specific individual.

41.     In a section entitled "**THE SITE COLLECTS YOUR INFORMATION**," Casper's Privacy Policy states that Personal Information is collected when visitors "Purchase a Casper Product," "Make a Payment," "Submit Information to the Site," "Communicate with [Casper]," "Take a Survey," and when users "use [Casper's] referral service to tell a friend about Casper," among other uses. These statements are false and/or misleading because they fail to disclose that Casper also collects information by scanning visitor's devices for files that may de-anonymize and identify them, and also by intercepting their keystrokes, mouse clicks and other communications in real time, even if the visitor does not intend to share those communications with Casper – for example, data typed on a form where the user does not click "submit."

42.     On the version of the Privacy Policy with an Effective Date of January 31, 2017 (*i.e.*, when Plaintiff Cohen visited Casper.com), in a section entitled "**HOW CASPER USES YOUR INFORMATION**," Casper states that:

> **We use Personal Information to facilitate and improve our services, and communicate with you.**

17

**Internal and Service-Related Usage.** We use and retain information, including Personal Information, to improve and facilitate the Site and our services. We may also use such data to help us deliver targeted advertising to consumers that is displayed on both Casper websites and unaffiliated websites, to analyze interactions with and performance of our Site, to measure the effectiveness of advertising on behalf of our advertising partners, and to identify the audience most likely to respond to an advertisement. We may also use data from third parties (such as data vendors) pursuant to their own privacy policies, and enhance information (including Personal Information) that we have collected with such third-party data. We believe that the use of such information is helpful to providing users with better services. However, if you would like to opt-out of these interest-based advertisements, please follow the opt-out process described below under "Choice."

**Communications.** We may send email to the email address you provide to us to verify your account and for informational and operational purposes, such as account management, customer service, or system maintenance.

**Marketing.** We may use information about you, including Personal Information, to send you information about Casper's products and services.

**Non-Personal Information.** We may use anonymized, aggregated or other data that is not Personal Information for any purpose, including marketing. These uses may include but are not limited to analyzing interactions with and performance of the Site, enabling us to improve our Site and services, and sharing such information with our business partners, affiliates, or any other third party. Similarly, we may enhance any such anonymized and aggregated data collected via our Site with other information collected from our business partners.

43.     On the version of the Privacy Policy with an Effective Date of January 31, 2017

(*i.e.*, when Plaintiff Cohen visited Casper.com), in a section entitled "**CASPER MAY**

**DISCLOSE YOUR INFORMATION**," Casper states that:

We may share your information:

- to comply with legal obligations;

- to protect and defend our rights and property; and

> - with your permission.[13]
>
> We do not share your Personal Information with third parties for those third parties' marketing purposes unless you first agree to such sharing (either by opting in or choosing not to opt-out at the time we provide the choice).[14]

44.     These statements are false and/or misleading because Casper does in fact share visitor's Personal Information with NaviStone for NaviStone's marketing purposes.  And NaviStone then shares the information with other third parties for their marketing purposes.

45.     The Privacy Policy also states that "[i]f our practices change regarding previously collected Personal Information in a way that would be materially less restrictive than stated in the version of this Privacy Policy in effect at the time we collected the information, we will make reasonable efforts to provide notice and obtain consent to any such uses as may be required by law."  At no point did Casper attempt to obtain consent from Plaintiff Cohen.

**Other Allegations Common To All Claims**

46.     Defendants, as corporations, are "persons" pursuant to 18 U.S.C. § 2510(6).

47.     Plaintiff's and Class Members' keystrokes, mouse clicks, and other interactions with Casper.com are "electronic communications" as defined by 18 U.S.C. § 2510(12).

48.     For at least some of the communications at issue, neither Casper nor NaviStone was an intended recipient of the communication.  For example, Mr. Cohen has never made any purchase from Casper.  Thus, any datafiles retrieved from his device, or any information he may have typed onto forms without clicking submit, or any keystrokes, mouse clicks or similar touch

---

[13] On or about July 7, 2017, Casper added a fourth bullet point which reads "with our third party service providers."  Despite this change, the Effective Date of the Privacy Policy remained January 31, 2017.

[14] On or about July 7, 2017, Casper removed this paragraph from its Privacy Policy.  Despite this change, the Effective Date of the Privacy Policy remained January 31, 2017.

gestures intercepted through the wiretaps, were communications with Mr. Cohen's Internet service provider for the purpose of accessing web content, and were not communications with Casper or NaviStone. They were not communications to which Casper or NaviStone were intended to be parties.

49.      At the time Defendants implemented the wiretaps on casper.com, they intended to commit tortious acts including disclosures of the intercepted information which violated the Privacy Policy, violated the SCA, and violated New York's General Business Law ("GBL") § 349.

50.      Throughout the entirety of the conduct upon which this suit is based, Defendants' actions have affected interstate commerce.

51.      Defendants' actions complained of herein, including secretly and instantaneously capturing and redirecting the keystrokes, mouse clicks and other electronic communications of website visitors, are not necessary practices for owners, operators, and developers of Internet websites, nor are they incidental to the act of facilitating a website or e-commerce transactions. None of these actions was undertaken in the ordinary course of business. On the contrary, these actions are contrary to the legitimate expectations of website visitors, and are contrary to established industry norms. So much so that they were the subject of multiple exposés in industry publications, as discussed above.

52.      Defendants' actions are and have been intentional as evidenced by, *inter alia*, their design and implementation of the software wiretaps on casper.com, their use of wiretaps to access files on visitors' computers that are unrelated to the casper.com website, and their disclosures and uses of the intercepted data files and communications for profit.

20

## CLASS ACTION ALLEGATIONS

53.     Plaintiff seeks to represent a class all persons whose electronic or stored communications were intercepted through the use of NaviStone's wiretaps on casper.com (the "Class").  Plaintiff also seeks to represent a subclass of all Class members residing in the state of New York (the "New York Subclass").

54.     Members of the Class are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class number in the millions.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants.

55.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to, whether Defendants intentionally intercepted electronic communications in violation of 18 U.S.C. § 2511(1)(a); whether Defendants intentionally disclosed the intercepted electronic communications in violation of 18 U.S.C. § 2511(1)(c); whether Defendants intentionally used, or endeavored to use the intercepted electronic communications to de-anonymize website visitors in violation of 18 U.S.C. § 2511(1)(d); whether Casper procured NaviStone to intercept or endeavor to intercept electronic communications in violation of 18 U.S.C. § 2511(1)(a); whether NaviStone procured Casper to intercept or endeavor to intercept electronic communications in violation of 18 U.S.C. § 2511(1)(a); whether NaviStone's wiretaps, including the software codes described herein, are an "electronic, mechanical, or other device" as defined by 18 U.S.C. § 2510(5); whether NaviStone's wiretaps are primarily useful for the purpose of the surreptitious interception of

electronic communications in violation of 18 U.S.C. § 2512; whether NaviStone violated 18 U.S.C. § 2512 by intentionally creating the wiretap codes, by possessing those wiretaps, by advertising them on the NaviStone website, and by distributing them to Casper for installation on Casper's website; whether Casper violated 18 U.S.C. § 2512 by receiving the wiretaps from NaviStone, which were transported through interstate commerce, by possessing those wiretaps, and by further distributing them through the software codes embedded on casper.com; whether each class member is entitled to the remedies specified under 18 U.S.C. § 2520, including but not limited to statutory damages of $10,000 per class member; whether Defendants violated the SCA, 18 U.S.C. § 2701, by unlawfully accessing files stored on the computers and devices of visitors to casper.com; and whether Defendants engaged in deceptive acts or practices in violation of New York's General Business Law §§ 349 and 350 by intercepting and disclosing information obtained through the wiretaps in violation of the Privacy Policy.

56.     The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other class members, visited Casper.com and had his electronic communications intercepted and disclosed to NaviStone through the use of NaviStone's wiretaps.

57.     Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

58.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the

resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

59. Plaintiff brings all claims in this action individually and on behalf of members of the Class against Defendants.

## Count I
### For Interception Of Electronic Communications In Violation Of The Wiretap Act, 18 U.S.C. § 2511(1)(a)

60. Plaintiff repeats the allegations contained in ¶¶ 1-59, above, as if fully set forth herein.

61. By implementing NaviStone's wiretaps on casper.com, each Defendant intentionally intercepted, endeavored to intercept, and procured another person to intercept, the electronic communications of Plaintiff and Class Members, in violation of 18 U.S.C. § 2511(1)(a).

## Count II
### For Disclosure Of Intercepted Electronic Communications In Violation Of The Wiretap Act, 18 U.S.C. § 2511(1)(c)

62. Plaintiff repeats the allegations contained in ¶¶ 1-59, above, as if fully set forth herein.

63. By intentionally disclosing the intercepted electronic communications of the Plaintiff and Class Members to each other, and to other third parties, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendants have violated 18 U.S.C. § 2511(1)(c).

**Count III**
**For Use Of Intercepted Electronic Communications In Violation Of The Wiretap Act, 18 U.S.C. § 2511(1)(d)**

64. Plaintiff repeats the allegations contained in ¶¶ 1-59, above, as if fully set forth herein.

65. By intentionally using, or endeavoring to use, the contents of the Plaintiff's and Class Members' intercepted electronic communications to de-anonymize them, and for other purposes, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendants have violated 18 U.S.C. § 2511(1)(d).

**Count IV**
**For Procuring In Violation Of The Wiretap Act, 18 U.S.C. § 2511(1)(a)**

66. Plaintiff repeats the allegations contained in ¶¶ 1-59, above, as if fully set forth herein.

67. By intentionally procuring NaviStone to intercept or endeavor to intercept electronic communications, Casper violated 18 U.S.C. § 2511(1)(a).

68. By intentionally procuring Casper to intercept or endeavor to intercept electronic communications, NaviStone violated 18 U.S.C. § 2511(1)(a).

## Count V
### For Manufacture, Distribution, Possession And Advertising Of Electronic Communication Intercepting Devices In Violation Of The Wiretap Act, 18 U.S.C. § 2512

69.     Plaintiff repeats the allegations contained in ¶¶ 1-59, above, as if fully set forth herein.

70.     Each of NaviStone's wiretaps, including the software codes described herein, are an "electronic, mechanical, or other device" as defined by 18 U.S.C. § 2510(5), and are primarily useful for the purpose of the surreptitious interception of electronic communications.

71.     By intentionally creating the wiretap codes, by possessing those wiretaps, by advertising them on the NaviStone website, and by distributing them to Casper for installation on Casper's website, NaviStone violated 18 U.S.C. § 2512.

72.     By receiving the wiretaps from NaviStone, which were transported through interstate commerce, by possessing those wiretaps, and by further distributing them through the software codes embedded on casper.com, Casper violated 18 U.S.C. § 2512.

## Count VI
### For Violation Of The Stored Communications Act, 18 U.S.C. §§ 2701, *et seq.*

73.     Plaintiff repeats the allegations contained in ¶¶ 1-59, above, as if fully set forth herein.

74.     Plaintiff's and Class members' computers and devices are facilities through which an electronic communications service is provided.

75.     Through use of the wiretaps described herein, Defendants intentionally accessed stored files on Plaintiff's and Class members' computers and devices without authorization or by exceeding an authorization given, in violation of 18 U.S.C. § 2701.

## Count VII
### For Deceptive Acts or Practices, New York Gen. Bus. Law § 349

76.     Plaintiff repeats the allegations contained in ¶¶ 1-59, above, as if fully set forth herein.

77.     By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts and practices by wiretapping visitors to Casper's website, casper.com, which are used by Defendants scan the user's computer in search of files that can be used to de-anonymize and identify the user, and also to observe visitors' keystrokes, mouse clicks and other electronic communications in real time for the purpose of gathering PII to de-anonymize those visitors.

78.     The foregoing deceptive acts and practices were directed at consumers.

79.     The foregoing deceptive acts and practices are misleading in a material way because they violate federal and state law, run contrary to industry norms, and are contrary to representations made in the www.casper.com Privacy Policy.

80.     Plaintiff and class members were injured as a direct and proximate result of Defendants' violation because have suffered the loss of privacy through the exposure of the personal and private information.

81.     On behalf of himself and other members of the Class and New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover his actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## Count VIII
### For False Advertising, New York Gen. Bus. Law § 350

82.     Plaintiff repeats the allegations contained in ¶¶ 1-59, above, as if fully set forth herein.

26

83. Based on the foregoing, Defendants have engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law by making false statements in the casper.com Privacy Policy as described above.

84. Plaintiff and New York Subclass members were injured as a direct and proximate result of Defendants' violation because they have suffered the loss of privacy through the exposure of the personal and private information.

85. On behalf of himself and other members of the Class and New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover his actual damages or five hundred dollars per violation, whichever is greater, three times actual damages and reasonable attorneys' fees.

## Relief Sought

86. WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks a judgment against Defendants as follows:

A. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

B. For an order declaring that Defendants' conduct as described herein violates the statutes referenced herein;

C. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D. For all remedies specified in the Wiretap Act, 18 U.S.C. § 2520, including the actual damages suffered by the plaintiff, any profits made by Defendants as a result of the violations, statutory damages of whichever is greater of $100 a day for each day of violation or $10,000 for each class member, such preliminary and other equitable or declaratory relief as may be appropriate, punitive damages, and a reasonable attorney's fee and other litigation costs reasonably incurred;

E.     For all remedies specified in the Stored Communications Act, 18 U.S.C. § 2707(b) and (c), including the actual damages suffered by the plaintiff, any profits made by Defendants as a result of the violations, statutory damages of $1,000 per class member, such preliminary and other equitable or declaratory relief as may be appropriate, punitive damages, and a reasonable attorney's fee and other litigation costs reasonably incurred;

F.     For all remedies specified in GBL §§ 349 and 350;

G.     For prejudgment interest on all amounts awarded;

H.     For an order of restitution and all other forms of equitable monetary relief;

I.     For injunctive relief as pleaded or as the Court may deem proper; and

J.     For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## **Jury Demand**

87.     Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: February 7, 2018                Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:        */s/ Scott A. Bursor*
                Scott A. Bursor

Scott A. Bursor
Neal J. Deckant
Frederick J. Klorczyk, III
Alec M. Leslie
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
Email: scott@bursor.com
       ndeckant@bursor.com
       fklorczyk@bursor.com
       aleslie@bursor.com

*Attorneys for Plaintiff*